UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

MICHAEL MORAN,

                     Plaintiff,

     -against-

COUNTY OF SUFFOLK and JOHN DOE,
the person intended to be the police officer
who shot plaintiff,

                 Defendants.

-----------------------------------------------------------------x

**MEMORANDUM AND
ORDER**

11 Civ. 3704 (PKC) (GRB)

PAMELA K. CHEN, United States District Judge:

       Plaintiff Michael Moran ("Plaintiff") initiated this proceeding against defendants County of Suffolk (the "County") and a John Doe police officer under 42 U.S.C. § 1983 alleging that the use of unreasonable deadly force against him violated his rights under, *inter alia*, the Fourth Amendment of the United States Constitution. (Dkt. 1 ("Complaint" or "Compl.").) Plaintiff also asserts claims under state law and common law, including claims for assault and battery and negligence. Presently before the Court is the County's motion for summary judgment. For the reasons set forth below, the County's motion is granted and the case is dismissed.

***BACKGROUND***

## I.    <u>Factual Background</u>

Unless otherwise stated, the following facts are taken from Plaintiff's Rule 56.1 Statement (Dkt. 23 ("Pl. St.")), and all reasonable inferences are drawn in Plaintiff's favor as the non−moving party.[1] *See Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

On August 4, 2010, at around 4:00 p.m., Plaintiff was waiting for his girlfriend outside a Dunkin Donuts located in West Babylon, New York. (Pl. St. ¶ 3.) Plaintiff was sitting on a bench and had with him a black fabric backpack containing his laundry. (*Id.* ¶ 5.) Plaintiff observed two police cars enter the Dunkin Donuts parking lot. (*Id.* ¶ 4.) After a few moments, Plaintiff picked up his backpack and walked to the entrance of the Dunkin Donuts. (*Id.* ¶ 5.) From outside, Plaintiff saw his girlfriend in handcuffs and struggling with police officers. (*Id.* ¶ 6; Dkt. 21 (Declaration of Ralph G. Bell, dated Mar. 17, 2014 ("Bell Decl.")) Ex. A at 150−51, 154.)

Suffolk County Police Officers Robert Bodenmiller ("Bodenmiller"), Jennifer Price ("Price"), and Charles Erdmann ("Erdmann") had gone to the Dunkin Donuts in response to a call about an emotionally disturbed woman in the vicinity. (Pl. St. ¶¶ 8, 11, 24; *see, e.g.*, Bell Decl. Ex. B at 15−18.) Officers Bodenmiller and Price identified Plaintiff's girlfriend as someone who matched the description they were provided, and were in the process of detaining

---

[1] The Court declines Plaintiff's invitation to deny the County's motion based on the County's failure to comply with Local Rule 56.1. (*See* Pl. Mem. at 10.) Although the County's 56.1 Statement does not set forth undisputed material facts supported by citations to competent evidence (*see* Dkt. 24-1), as required by the Rule, the Court exercises its "broad discretion to . . . to overlook a party's failure to comply with local court rules[,]" and conducts its own review of the record. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). Accordingly, where relevant, the Court cites to supporting evidence in the record.

and questioning her.  (Bell Decl. Ex. B at 24−38.)  At the time, Bodenmiller and Price each had a baton, mace, a taser, and a Glock semiautomatic handgun.  (Pl. St. ¶ 23.)

Plaintiff ran inside and stopped just inside the entrance and dropped his backpack to the ground next to his left foot.  (*Id.* ¶¶ 7, 35−36; Bell Decl. Ex. A at 158−60.)[2]  Plaintiff testified that Price, who was closest to him, approached him and instructed him to "calm down."  (Pl. St. ¶ 38; Bell Decl. Ex. A at 161.)  Bodenmiller "observed a dark colored object" in Plaintiff's right hand.  (Pl. St. ¶ 8.)  Bodenmiller did not see Plaintiff point the object.  (*Id*. ¶ 9.)  Nor did Plaintiff raise his hands toward the officers or verbally threaten them.  (*Id.* ¶¶ 10, 12−14.)  Bodenmiller saw Price turn towards Plaintiff, but did not hear her say anything or see her raise her hands.  (*Id.* ¶ 15.)  Bodenmiller further stated that Plaintiff did not lunge or jump at Price.  Price never requested Bodenmiller's assistance or indicate to him that she felt threatened.  (*Id.* ¶¶ 17−18.)

Without saying anything to Plaintiff, Bodenmiller fired two shots, aiming for Plaintiff's "center mass."  (*Id.* ¶¶ 19−20, 41.)  Bodenmiller testified that he had been trained to fire twice at the center mass of a subject when in close proximity, and, "[i]f the threat does not stop" to take a third shot to the head.  (Bell Decl. Ex. B at 57−58.)  Plaintiff was struck with two bullets, one in the right index finger and one at the "rib line."  (Pl. St. ¶ 21.)  Plaintiff heard "three pops" and felt pain in his stomach before falling to his knees and landing on his right side.  (*Id.* ¶ 42.)  No weapon or black object was ever found or recovered on or near Plaintiff's person following the shooting.  (*Id.* ¶ 22.)  Neither Price nor the third officer, Erdmann, drew their weapons during the incident.  (*Id.* ¶¶ 17, 25.)

---

[2] Plaintiff's account differs from the officers' in this regard; Price and Erdmann testified that Moran approached the officers "aggressively" or in a "slow run."  (*See* Bell Decl. Exs. C. at 72 & D at 44, 58.)  Bodenmiller testified that Moran "was charging towards Officer Price."  (*Id.* Ex. B at 44.)  Plaintiff also denies having any object in his right hand.  (Pl. St. ¶ 39.)

Two months after the shooting, Price issued Plaintiff a ticket for "obstructing governmental administration" at the instruction of one of her supervisors. (*Id.* ¶ 26.)

About a year after the shooting, on September 27, 2011, the Suffolk County Police Department issued a Department Directive regarding the "Use of Force − Use of Firearms and Deadly Physical Force" (hereinafter "Use of Force Directive" or "Directive"). (Bell Decl. Ex. H at 24−1.) The purpose of the Directive was to "establish[] the limits within which the use of deadly force, particularly the use of firearms, by members of the Suffolk County Police Department is permitted, and outlines certain situations in which the use of firearms, or other means of deadly force, is not permitted." (Pl. St. ¶¶ 28, 29; Bell Decl. Ex. H at 24−1.) Under the "Rules and Regulations" section of the Directive, "[a]n officer may discharge a firearm <u>only</u> in" specified situations, including "Confrontational Situations" defined as "[w]hen reasonable and necessary to defend an officer or another from what the officer reasonably believes to be the use, or imminent use, of deadly force." (Pl. St. ¶ 30; Bell Decl. Ex. H at 24−2 (emphasis in original).) The Use of Force Directive further provides that "[s]ince all possible combinations of circumstances cannot be envisioned . . . a police officer may use deadly force as an emergency measure to avoid the imminent unlawful use of deadly force which is about to occur by reason of a situation occasioned or developed through no fault of the officer; and, which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability of avoiding such injury clearly outweighs the desirability of avoiding the conduct sought to be prevented by [the Directive's] Rules and Procedures." (Bell Decl. Ex. H at 24−4.)

Plaintiff alleges that Bodenmiller is the subject of another excessive force suit claiming that Bodenmiller wrongfully "utilized a shield to restrain" a prisoner, who subsequently died in police custody on May 6, 2011. (Bell Decl. Ex. B at 10−11; Pl. St. ¶ 27.)

## II. **Procedural History**

Plaintiff commenced this action on August 1, 2011, naming as defendants the County and a John Doe as "the person intended to be the police officer who shot plaintiff." (Compl. at 1.) The County answered on August 16, 2011. (Dkt. 3.) On September 6, 2011, Plaintiff submitted a letter to Magistrate Judge William. D. Wall requesting discovery regarding the identity of the police officer "in order that said individual may be correctly named and served in the lawsuit." (Dkt. 4.) Following a pretrial conference, Judge Wall issued an order dated October 6, 2011 requiring that "[m]otions to join new parties or amend the pleadings" be filed by March 22, 2012 and that discovery be completed by June 14, 2012. (Dkt. 7−1 at 1.) On or around November 8, 2011, Plaintiff served a summons for John Doe "n/k/a Robert Bodenmiller"[3] via substitute service at the Suffolk County Police Department. (Dkt 8 at 2 (Proof of Service for John Doe).) Plaintiff did not, however, amend the Complaint to name Bodenmiller. Indeed, to this day, Plaintiff has not sought to amend the Complaint to name Bodenmiller as a defendant.

Thereafter, on June 20, 2012, Defendants furnished Plaintiffs with the Police Department's Internal Affairs file regarding the shooting, which indicated that Bodenmiller was the officer who shot Plaintiff. (*See* Dkt. 11; Bell Decl. Ex. H.) Plaintiff then deposed Bodenmiller on July 10, 2013. (Bell Decl. Ex. B.) On October 15, 2013, discovery concluded and the parties filed a joint proposed pretrial order that still indicated a "John Doe" on the caption. (Dkt. 16 at 1). At a conference held on October 22, 2013, the Court granted the County leave to file its summary judgment motion.

---

[3] The acronym "n/k/a" refers to the phrase "now known as."

*LEGAL STANDARD*

Summary judgment is proper only when, construing the evidence in the light most favorable to the non−movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 173 (2d Cir. 2012). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). A fact is material when it "might affect the outcome of the suit under the governing law." *Id.* Because Plaintiff, as the non−moving party, has the "burden of proof at trial" on his claim, the County's ability to satisfy this standard as to any "essential element" of a claim "necessarily renders all other facts immaterial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986), and entitles the County to summary judgment.

In determining whether there are genuine disputes of material fact, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry*, 336 F.3d at 137 (citation and quotation omitted). The nonmoving party cannot avoid summary judgment simply by relying "on conclusory allegations or unsubstantiated speculation." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quotations and citations omitted). That party must offer "some hard evidence showing that its version of the events is not wholly fanciful." *Miner v. Clinton Cnty., New York*, 541 F.3d 464, 471 (2d Cir. 2008) (quotations and citation omitted).

*DISCUSSION*

## I. <u>Plaintiff's Claims against the John Doe Police Officer</u>

The Court initially addresses the parties' dispute regarding which defendants are involved in this action. Plaintiff alleges that the John Doe police officer named in the Complaint, now

known to be Bodenmiller, used excessive force in violation of Plaintiff's constitutional rights. (Compl. ¶¶ 8, 14.) In response to the County's summary judgment motion, Plaintiff asserts that the case must proceed against the John Doe officer because no summary judgment motion was filed on behalf of the John Doe officer, "now known to be Bodenmiller." (Dkt. 22 ("Pl. Mem.") at 11). The County disputes Plaintiff's contention on the basis that Bodenmiller has not been and cannot now be made a party to this case. (Dkt. 24−8 ("Reply") at 3.) The Court agrees.

Although Bodenmiller indisputably is the officer who shot Plaintiff, Plaintiff did not amend the Complaint to substitute Bodenmiller as the John Doe Defendant prior to the expiration of the applicable statute of limitations, nor, for that matter, has he done so at any point in this litigation. Plaintiff's failure to timely amend the Complaint is fatal to his claims against the John Doe Defendant.

Section 1983 claims arising in New York have a statute of limitations of three years. *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004). Here, Plaintiff's claim accrued on August 4, 2010, and the limitations period expired on August 4, 2013. Plaintiff filed his Complaint on August 1, 2011, naming as defendants the County and "John Doe, the person intended to be the police officer who shot plaintiff." (Compl. at 1.) Plaintiff's claim against the County is timely. As to the individual officer Defendant, the general rule is that "'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (quoting *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1075 (2d Cir. 1993)). Substitutions of a party's name for John Doe, therefore, "may only be accomplished" if the amended pleading relates back to the date of the complaint under Federal Rule of Civil Procedure 15(c). *Aslanidis*, 7 F.3d at 1075. Since Plaintiff did not amend his

Complaint to substitute Bodenmiller for the John Doe Defendant, Plaintiff's claims against Bodenmiller are timely only if he is permitted to file an amendment that "relates back" to the Complaint, filed on August 1, 2011. *See Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010) ("Rule 15(c) of the Federal Rules of Civil Procedure governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations."); *Laureano v. Goord*, No. 06 Civ. 7845 (SHS) (RLE), 2007 WL 2826649, at *5 (S.D.N.Y. Aug. 31, 2007) ("When the statute of limitations would otherwise bar an amendment, Rule 15(c) allows the claim if it 'relates back' to the original complaint." (citing Fed. R. Civ. P. 15(c)(3)).

Plaintiff's counsel has not attempted to substitute Bodenmiller either by moving to amend the Complaint, or by addressing the amendment issue in his opposition to the County's motion for summary judgment. Though it appears that Plaintiff would prefer the Court ignore the amendment issue, the Court considers *sua sponte* whether Plaintiff should be granted leave to file an amended complaint. The Court finds that he should not.

### A. Relation Back Under Rule 15(c)(1)(C)

Rule 15(a) instructs courts that "leave to amend [a complaint] 'shall be freely given when justice so requires.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citation omitted). Nevertheless, a motion to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies . . ., or undue prejudice to the non−moving party." *Burch v. Pioneer Credit Recovery*, Inc., 551 F.3d 122, 126 (2d Cir. 2006); *see Monahan v. N.Y.C. Dep't of Corr.* 214 F.3d 275, 283 (2d Cir. 2000) (Leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility."). An amendment is futile if the claim

to be added would be barred by the applicable statute of limitations.  *Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000).

"Rule 15(c)(1)(C) provides the federal standards for relation back."  *Hogan*, 738 F.3d at 517.  Under Rule 15(c)(1)(C), an amendment to change the party against whom a claim is asserted will relate back only if all of the following specifications are met:

> (1) the claim must have arisen out of conduct set out in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party should have known that, *but for a mistake of identity*, the original action would have been brought against it; and ... [4] the second and third criteria are fulfilled within 120 days of the filing of the original complaint, and ... the original complaint [was] filed within the limitations period.

*Hogan*, 738 F.3d at 517 (quoting *Barrow v. Wethersfield Police Dep't.*, 66 F.3d 466, 468–69 (2d Cir.1995) (emphasis in *Hogan*); *see* Fed. R. Civ. P. 15(c)(1)(C)(i)−(ii).

With respect to what constitutes "mistaken identity" for purposes of permitting relation back under Rule 15(c), the Second Circuit in *Barrow* held that:

> Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly added defendants *were not named originally because the plaintiff did not know their identities*.  Rule 15(c) explicitly allows the relation back of an amendment due to a 'mistake' concerning he identity of the parties (under certain circumstances), but not the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake.

66 F.3d at 470 (emphasis added).[4]

---

[4] While there has been some debate over the continuing vitality of *Barrow* after the Supreme Court's decision in *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010), the Court finds that *Barrow* remains good law, and that, unlike *Krupski*, *Barrow* is directly relevant to the facts presented here.  *See*, *e.g.*, *Morales v. Cnty. of Suffolk*, 952 F. Supp. 2d 433, 437 (E.D.N.Y. 2013) (finding that *Krupski* did not address the key issue in *Barrow*, *i.e.*, "whether a plaintiff's lack of knowledge as to the identity of 'John Doe' Defendants can be considered a 'mistake' or 'error'" and citing decisions concluding that "*Barrow* remains good law after *Krupski*.").

In other words, where a plaintiff is mistaken about the identity of the *proper party* to be sued, an amendment to name that party may relate back under Rule 15(c). *Id.* at 469.[5]  However, where the plaintiff knows who the proper party is, just not by name, there is no mistake about identity that will permit relation back under Rule 15(c).  *See Hogan*, 738 F.3d at 518 ("This Court's interpretation of Rule 15(c)(1)(C) makes clear that the lack of knowledge of a John Doe defendant's name does not constitute a 'mistaken identity.'")  In that situation, any amendment to add the proper party's name, once determined, must be made within the statute of limitations. *See id.* at 517 (reiterating that "'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued").

Here, Plaintiff was not mistaken about the identity of the proper John Doe officer to sue; rather, he simply did not did know the officer's name when he filed suit.  In initiating this action, Plaintiff intended to sue the "police officer who shot plaintiff" on August 4, 2010.  (Compl. at 1.) Plaintiff identified that officer as "John Doe" in the Complaint because he did not know Bodenmiller's name at the time, not because of any mistake regarding Bodenmiller's role in, or liability for, the shooting.  Though Plaintiff was unaware of Bodenmiller's identity, he was not mistaken about the need to name Bodenmiller as a defendant.  (*See* Dkt. 4 (Plaintiff's letter requesting discovery from the County regarding the John Doe's officer's identity, and indicating that the officer had to be "correctly named . . . in the lawsuit")); *Barrow*, 66 F.3d at 470 (Rule 15(c) does not permit relation  back where the "plaintiff knows that [the] defendant[] must be named").  Thus, Plaintiff's failure to name Bodenmiller in this suit does not constitute a mistake

---

[5] In *Barrow*, the Second Circuit cited the example of this type of mistake contained in the Advisory Committee Notes for Rule 15(c):  "when a defendant mistakenly sues an agency of the government without knowing that the cause of action requires the defendant to sue an agency head."  66 F.3d at 469.

under Rule 15(c)(1)(C)(ii). *See Bender v. City of New York*, No. 14 Civ. 4386 (LTS) (GWG), 2015 WL 524283, at *3−4 (S.D.N.Y. Feb. 10, 2015) (under *Barrow*, "[plaintiff] cannot satisfy Rule 15(c)(1)(C)(ii), as the John Doe defendants were unnamed because [plaintiff] did not know their names at the time she filed the complaint; rather, she first learned this information only when the named defendants made their initial disclosures"); *Ceara v. Deacon*, No. 13 Civ. 6023 (KMK), 2014 WL 6674559, at *4 (S.D.N.Y. Nov. 25, 2014) (plaintiff's reason for not serving officer within the three year period—that he did not know the identity of the defendant—was insufficient to satisfy the mistake element of Rule 15(c)(1)(C)); *Vasconcellos v. City of New York*, No. 12 Civ. 8445 (CM), 2014 WL 4961441, at *5−6 (S.D.N.Y. Oct. 2, 2014) ("[u]nder a straightforward application of *Barrow*," plaintiff's failure "to identify the Officer Defendants by name in her original suit because she did not know their identities" "cannot be characterized as a mistake" for purposes of Rule 15(c)); *Strada v. City of New York*, No. 11 Civ. 5735 (MKB), 2014 WL 3490306, at *9 (E.D.N.Y. July 11, 2014) ("*Barrow* precludes this Court from finding that [p]laintiff's failure to amend the Complaint to name the individual officers was a mistake contemplated by Rule 15(c)."); *Ulloa v. City of New York*, No. 13 Civ. 5795 (AKH), 2014 WL 1100226, at *2 (S.D.N.Y. Jan.6, 2014) ("a plaintiff's lack of knowledge as to the identity of John Doe defendants cannot be considered a 'mistake" (citation omitted)). Accordingly, Rule 15(c)(1)(C) does not provide a basis to allow Plaintiff to amend the Complaint to name Bodenmiller and relate the claims against him back to the date of the original Complaint.

### B. Relation Back Under Rule(c)(1)(A)

In addition to relation back under Rule 15(c), the Courts must examine the "controlling body of limitations law," and apply state law if it provides "a more forgiving principle of relation back than the one provided" by Rule 15(c). *Hogan*, 738 F.3d at 518 (quoting Fed. R. Civ. P. 15,

Advisory Comm. Notes 1991); *see* Fed. R. Civ. P. 15(c)(1) (an amended pleading also relates back to an earlier pleading if "the law that provides the applicable statute of limitations allows relation back"). The Court will thus examine whether a claim against Bodenmiller would be timely under the relevant provisions of the New York Civil Practice Law and Rules ("CPLR").

      1.  Section 203 of the CPLR

A party may seek relation back for a previously unknown defendant under CPLR § 203(c), New York's general relation back statute. *Strada*, 2014 WL 3490306, at *6 (citing *Bumpus v. New York City Transit Auth.*, 883 N.Y.S.2d 99, 106 (App.Div.2009)). Under § 203, courts allow claims against a new defendant to "relate back to timely filed pleadings when (1) the new claim arose out of the same conduct, transaction or occurrence as the original allegations; (2) the new party is united in interest with the original defendant, and by reason of that relationship can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; and (3) the new party knew or should have known that, but for a mistake as to the identity of the proper parties, the action would have been brought against him as well." *JCG v. Ercole*, No. 11 Civ. 6844 (CM) (JLC), 2014 WL 1630815, at *15 (S.D.N.Y. Apr. 24, 2014) (quoting *Fisher v. Cnty. of Nassau*, No. 10 Civ. 0677 (JS) (ETB), 2011 WL 4899920, at *5 (E.D.N.Y. Oct. 13, 2011)), *report and recommendation adopted*, 2014 WL 2769120 (S.D.N.Y. June 18, 2014).

Here, Plaintiff cannot avail himself of § 203 for the same reasons that Rule 15(c) does not apply. Plaintiff cannot establish the third prong of the test under § 203, which, like Rule 15(c), requires a mistake as to the identity of the proper party to be sued. As discussed above in the Rule 15(c) context, the failure to name a defendant whom the plaintiff knows must be named does not constitute a "mistake." "The third prong of § 203(c) 'employs the same standard as the

federal rule.'" *Bender*, 2015 WL 524283, at \*6 (quoting *Sloane v. Town of Greenburgh*, No. 01 Civ. 11551(MBM), 2005 WL 1837441, at \*3 (S.D.N.Y. July 27, 2005)).  Since Plaintiff cannot satisfy Rule 15(c)'s mistake element, he also cannot satisfy the third prong of § 203(c).  Any claim against Bodenmiller therefore would not relate back to the date of the Complaint under CPLR § 203.  *See, e.g.*, *Strada*, 2014 WL 3490306, at \*9.

2. Section 1024 of the CPLR

CPLR § 1024 allows "[a] party who is ignorant, . . . of the name or identity of a person who may properly be made a party[] [to] proceed against such person as an unknown party by designating so much of his name and identity as is known.  If the name or remainder of the name becomes known[,] all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly."  Under CPLR § 306−b, once a John Doe complaint is filed, a plaintiff must serve it on the correct defendant within 120 days after the commencement of the action.

The Second Circuit recently held that CPLR § 1024 is more forgiving in relating back complaints compared to the federal standard under Rule 15(c).  *See Hogan*, 738 F.3d at 518; *accord Ceara*, 2014 WL 6674559, at \*5; *Strada*, 2014 WL 3490306, at \*5.  To invoke § 1024, a plaintiff must show that: (1) the plaintiff "exercise[d] due diligence, prior to the running of the statute of limitations, to identify the defendant by name;" and (2) the plaintiff "describe[d] the John Doe party in such form as will fairly apprise the party that he is the intended defendant."  *Hogan*, 738 F.3d at 519 (alteration, citations and internal quotation marks omitted).  "Due diligence in this context requires that a plaintiff 'show that he or she made timely efforts to identify the correct party before the statute of limitations expired.'"  *Strada*, 2014 WL 3490306, at \*5 (quoting *Justin v. Orshan*, 788 N.Y.S.2d 407, 408 (N.Y. App. Div. 2005)).

Plaintiff's inexplicable failure to amend the complaint—despite learning Bodenmiller's identity shortly after filing the Complaint—cannot satisfy the due diligence requirement of § 1024. Early in this litigation, Plaintiff sought discovery of the identity of the John Doe police officer so "that said individual may be correctly named and served[.]" (Dkt. 4.) Plaintiff then served a summons for John Doe, "n/k/a Robert Bodenmiller[,]" at the Suffolk County Police Department on or about November 8, 2011 (*see* Dkt. 8 at 2)—several months before the March 22, 2012 court-imposed deadline for joining new parties or amending the Complaint, and almost two years before the expiration of the statute of limitations on August 4, 2013. Yet Plaintiff did not seek to amend the Complaint in the time between November 8, 2011 and August 4, 2013. Plaintiff still did not act to amend the Complaint after the County furnished an Internal Affairs report on June 20, 2012 that named Bodenmiller as the officer who shot Plaintiff. Nor did Plaintiff seek to amend the Complaint after conducting a deposition of Bodenmiller on July 10, 2013. Even after the County raised this issue in its summary judgment motion papers, Plaintiff did not seek to amend. Moreover, Plaintiff offers no explanation for his failure to amend the Complaint or seek an extension of the time in which to do so. Because Plaintiff learned the true identity of the John Doe Defendant prior to the expiration of the statute of limitations, he cannot invoke § 1024 to now add Bodenmiller as a defendant to this action. *See Strada*, 2014 WL 3490306, at *6 (plaintiff did not exercise due diligence where, *inter alia*, defendant provided plaintiff with the names of the officers involved prior to the expiration of the statute of limitations, and plaintiff did not attempt to amend the Complaint). *Cf. Ceara*, 2014 WL 6674559, at *5 (plaintiff acted with due diligence because plaintiff made efforts to ascertain defendant's full identity, apprised the court of his efforts, and promptly filed an amended complaint within thirty days of learning defendant's name).

Accordingly, an amendment to substitute Bodenmiller for the John Doe Defendant would not relate back to the filing date of Plaintiff's Complaint under federal or state law. Given that the statute of limitations has run, amending the Complaint to add Bodenmiller would be futile. Regrettably, Plaintiff has buried his head in the sand, to his peril, with respect to this fatal flaw in his Complaint. The Court is thus constrained from granting Plaintiff leave to file an amended complaint, and Plaintiff's claim against the John Doe Defendant must be dismissed.

## II.  Plaintiff's Claims Against the County

### A. Section 1983 Claim

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must show the deprivation of any rights, privileges, or immunities secured by the Constitution and laws by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir.1993). In this action, Plaintiff's claims arise under the Fourth Amendment's prohibition against unreasonable seizures.[6]

Because municipalities may not be held vicariously liable for the actions of their employees, a § 1983 claim against a municipality must be premised on the theory that the municipality maintained a policy, practice, or custom that caused the plaintiff's constitutional injury. *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 694–95 (1978) ("[A] local

---

[6] Although Plaintiff also asserts claims under the due process clause and the Eighth Amendment, "[a]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see Taylor v. Nassau Cnty.*, 11 Civ. 0934 (SJF), 2012 WL 5472554, at *1 n.2 (E.D.N.Y. Nov. 5, 2012) (addressing excessive force claim brought under Fourth and Fourteenth Amendment under Fourth Amendment only). The Eighth Amendment, which applies to claims of excessive force brought by convicted prisoners, is also unavailable to Plaintiff. *See Graham*, 490 U.S. at 394; *Whitley v. Albers*, 475 U.S. 312, 327 (1986).

government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983."). Courts in this Circuit apply a two−prong test to § 1983 claims brought against a municipality. *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985). A "plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer." *Id.* (citation omitted). Next, a plaintiff must establish a "'direct causal link between [the] municipal policy or custom and the alleged constitutional deprivation.'" *Hayes v. Cnty. of Sullivan*, 853 F. Supp. 2d 400, 439 (S.D.N.Y. 2012) (quoting *City of Canton v. Harris,* 489 U.S. 378, 385(1989)); *accord Abreu v. City of New York*, 657 F. Supp. 2d 357, 360 (E.D.N.Y. 2009) (quoting *Canton*, 489 U.S. at 385).

A policy or custom may be established by any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision−making authority; (3) a practice so persistent and widespread that it constitutes a custom through which constructive notice is imposed upon policymakers; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff. *See Parker v. City of Long Beach*, 563 F. App'x 39 (2d Cir. 2014), *as amended*, (Apr. 21, 2014) (failure to train); *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (widespread and persistent practice); *Hines v. Albany Police Dep't*, 520 F. App'x 5, 7 (2d Cir. 2013) (actions of policymakers); *Schnitter v. City of Rochester*, 556 F. App'x 5, 8 (2d Cir. 2014) (failure to train or supervise); *Missel v. Cnty. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (formal policy and act of a person with policymaking authority for the municipality).

Plaintiff alleges, in sum and substance, that the County was deliberately indifferent to his rights due to its failure to properly train or supervise its officers, including Bodenmiller. (Compl. ¶¶ 10−11.) Plaintiff points to two alleged policies in support of his claims: (1) the Use of Force Directive, which Plaintiff contends is "so vaguely worded" that it provides no meaningful guidance on when officers may exercise deadly force, and (2) Bodenmiller's deposition statement that he was trained to fire two shots aimed at a subject's center mass. (Pl. Mem. at 12−13.) Plaintiff asserts that the combination of these two policies created "a situation where Bodenmiller was shooting to kill" with only a vague directive on when he should use deadly force, thereby causing a deprivation of Plaintiff's constitutional rights. (*Id.* at 13−14.)

Deliberate indifference with respect to the failure to train or supervise municipal employees exists where the plaintiff establishes that (1) "a policymaker knows 'to a moral certainty' that [municipal] employees will confront a particular situation"; (2) "the situation either presents the employee with 'a difficult choice of the sort that training or supervision will make less difficult,' or 'there is a history of employees mishandling the situation'"; and (3) "'the wrong choice by the [municipal] employee will frequently cause the deprivation of a citizen's constitutional rights.'" *Wray v. City of New York*, 490 F.3d 189, 195−96 (2d Cir. 2007) (quoting *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992)). The plaintiff must show the "policymaker's inaction was the result of 'conscious choice' and not 'mere negligence.'" *Cash v. Cnty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011) (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 128 (2d Cir. 2004)); *see Feng Zhao v. City of New York*, 656 F. Supp. 2d 375, 396 (S.D.N.Y. 2009) ("To sustain a *Monell* claim based on a failure to supervise or discipline, the plaintiff must demonstrate that the decision−maker was on notice of a potentially serious problem of unconstitutional conduct, that the need for corrective action was obvious, and that the

decision–maker failed to investigate or take action in circumstances suggesting deliberate indifference to the rights of those being harmed.")

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 131 S.Ct. 1350, 1360 (2011) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409, (1997)). Without actual or constructive "notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* Nevertheless, "in a narrow range of circumstances," a municipality can be found to be deliberately indifferent based on a single incident where "the unconstitutional consequences of failing to train [are] so patently obvious that a city should be liable under § 1983 without proof of a pre–existing pattern of violations." *Connick*, 131 S.Ct. at 1360–61; *see Canton*, 489 U.S. at 390 n.10. The violation of constitutional rights must be a "highly predictable consequence" of the failure to train or supervise. *Connick*, 131 S.Ct. at 1361 (internal quotation marks omitted).

Even construing the evidence in the record most favorably to Plaintiff, no rational jury could conclude that the standard for municipal liability, under a failure to train theory or any other theory, has been met. Plaintiff fails to proffer evidence sufficient to permit a trier of fact to find that the County has acted with deliberate indifference in designing its training program or that the deficiencies he cites led to the violation of his rights by Bodenmiller. Most significantly, Plaintiff points to no evidence of similar violations by purportedly untrained officers that may have notified the County of any deficiencies with the County's training of its officers with respect to the use of deadly force and civilian encounters. The record is devoid of evidence that before the events of August 4, 2010, the County knew of a pattern or even one incident involving

use of excessive force or improper deadly force by Suffolk County police officers. *See Connick*, 131 S.Ct. at 1360 ("pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference" on a failure to train theory). Although Bodenmiller testified that he is a named defendant in another suit involving allegation of excessive force, there is no indication that that event occurred before August 4, 2010. (Bell Decl. Ex. B at 10−11.) Plaintiff's submissions suggest that, to the contrary, the incident occurred afterwards on May 6, 2011. (Pl. St. ¶ 27.) Nor is there any evidence indicating that the other alleged incident involved a use of force comparable or similar to the August 4, 2010 shooting. Thus, nothing suggests that the County condoned or ignored repeated constitutional violations.

To the extent Plaintiff relies on a single−incident theory of liability (*see* Pl. Mem. at 13), that claim also fails because Plaintiffs cannot show that the use of force training provided by the County to its police officers is tantamount to a lack of training. To make this showing, Plaintiffs must prove that the County's police officers have an "utter lack of an ability to cope with constitutional situations," *Connick*, 131 S.Ct. at 1363, and that "the need for more or different training is so obvious and the inadequacy so likely to result in the violation of constitutional rights," *Canton*, 489 U.S. at 390. *Accord Breitkopf v. Gentile*, No. 12 Civ.1084 (JFB) (AKT), 2014 WL 4258994, at *23 (E.D.N.Y. Aug. 29, 2014). Here, it is uncontroverted that the County provided some use of force training to Bodenmiller and his fellow officers. (*See, e.g.*, Pl. St. ¶ 19; Bell Decl. Ex. B at 57-58.) Bodenmiller testified that he was trained at the police academy, and annual training thereafter at the precinct, on the use of deadly physical force. (Bell Decl. Ex. B at 88-89.) Bodenmiller also testified to his understanding that he was "allowed to use deadly force when [he] reasonably believe[d] that deadly force is being used against [him] or a third person." (*Id.* at 89.) Where, as here, a plaintiff challenges the adequacy of training rather than

the failure to train at all, courts repeatedly have held that a plaintiff cannot rely on the single−incident theory of municipal liability. *See, e.g.*, *O'Brien v. Barrows*, 556 Fed. App'x. 2, 5 (2d Cir. 2014) ("failing to provide an armed police officer with *any* training about the constitutional limitations on the use of deadly force could constitute deliberate indifference" (emphasis in original)); *Breitkopf*, 2014 WL 4258994, at *23 ("Since *Connick*, some courts have concluded that a plaintiff cannot rely on the single−incident theory where she challenges the adequacy and not the lack of the existence of training."); *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 391–93 (S.D.N.Y. 2013) (collecting cases denying summary judgment based on lack of any training, and dismissing claims challenging adequacy of training).

Plaintiff's contention that the Use of Force Directive evidences the County's deliberate indifference by failing to provide sufficiently specific guidance on the use of deadly force also fails for the reasons already stated. *See Yang Feng Zhao*, 656 F. Supp. 2d at 394 (no triable issue of fact based on assertion that training was deficient in not providing guidance about when to believe a suspect's denial of guilt and when to avoid questioning). Furthermore, the Directive was issued in September 2011—over a year after Plaintiff was shot in August 2010—a fact seemingly overlooked by both parties. (Bell Decl. Ex. H at 24-1; *see* Reply at 4−7). It is difficult to see how any purported deficiency in the as−yet−unadopted Directive caused Bodenmiller to improperly implement deadly force against Plaintiff.

Lastly, even assuming *arguendo* that some iteration of the Use of Force Directive was in effect at the time of the shooting, such a policy, coupled with the training that Bodenmiller received about shooting twice at a subject's center mass, is still insufficient to establish the County's deliberate indifference. As previously discussed, Plaintiff has not presented any evidence tending to show that the improper use of force was a common problem in the County's

police force.  Nor has Plaintiff offered any evidence about deficiencies in the County's Use of Force Directive or training and how any additional or other training might have altered Bodenmiller's actions.  Thus, Plaintiff cannot show that the shooting was caused by a County policy, as opposed to Bodenmiller's failure to follow the training he received.  *See Amnesty Am.*, 361 F.3d at 129–30 ("The elements of an identified training deficiency and a close causal relationship, which together require the plaintiffs to prove that the deprivation occurred as the result of a municipal policy rather than as a result of isolated misconduct by a single actor, ensure that a failure to train theory does not collapse into *respondeat superior* liability.").[7] Accordingly, the County is entitled to summary judgment on Plaintiff's § 1983 claim.

### B.  Plaintiff's State Law Claims

Plaintiff asserts various state law claims against the County and John Doe Defendant that appear to allege excessive force, assault and battery, and negligent hiring, training, and supervision of police officers.  (Compl. ¶¶ 17−31.)  To the extent these claims allege negligent training or supervision by the County based on the same facts upon which the Plaintiff's Section 1983 claim against the County is based, the Court dismisses them, with prejudice, for the same reasons discussed above.  *See Henry–Lee v. City of New York*, 746 F. Supp. 2d 546, 566 (S.D.N.Y. 2010) ("To prevail on a [state law] claim for negligent hiring, training, supervision, or retention, a plaintiff must prove that a municipality's failure to properly train, hire, retain, or supervise 'its police officers in a relevant respect evidences a *deliberate indifference* to the rights of its inhabitants.'" (quoting *Jackson v. City of New York*, 596 N.Y.S.2d 457, 458 (1993))

---

[7] Indeed, as discussed, Bodenmiller testified that he received use of force training when he first became a County police officer and annually thereafter and that his understanding of the County's use of force policy was that he was "allowed to use deadly force when [he] reasonably believe[d] that deadly force is being used against [him] or a third person."  (Bell Decl. Ex. B at 89.)

(emphasis added)).  As for the remaining state law claims against both Defendants, the Court declines to exercise supplemental jurisdiction over them under 28 U.S.C. § 1367, and dismisses them without prejudice.

### *CONCLUSION*

The Court accordingly grants the County's motion for summary judgment in its entirety, and dismisses Plaintiff's Complaint.  All of Plaintiff's claims, except his state law claims that do not allege negligent training and supervision by the County and his state law claims against the John Doe Defendant, are dismissed with prejudice.  The Clerk of Court is respectfully requested to close this case.

SO ORDERED:


/s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: March 24, 2015
      Brooklyn, New York